UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* | : | |
| Stephanie Schweizer and Nancy Vee, | : | Civil Action No: |
| | : | 06-0648 (RCL) |
| Plaintiffs-Relators, | : | Judge Royce C. Lamberth |
| v. | : | |
| | : | |
| OCÉ, N.V., OCÉ NORTH AMERICA, | : | |
| OCÉ IMAGISTICS, and OCÉ-USA | : | |
| HOLDINGS, INC., | : | |
| | : | |
| Defendants | : | |

**PLAINTIFFS-RELATORS' MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION TO UNSEAL**

Plaintiff-Relators Stephanie Schweizer and Nancy Vee, by and through their undersigned Counsel, hereby submit this Memorandum of Points and Authorities in support of their Opposition to Defendant's Motion to Unseal Documents Filed by the Relators in this Case.

**I.      PROCEDURAL BACKGROUND**

On April 7, 2006, Relators filed a sealed Complaint against Defendants Océ Imagistics, Océ North America, and Océ-USA Holdings, Inc. ("Defendants" or "Océ"), alleging violations of the False Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq*. Specifically, the Complaint alleged that Océ violated its contract with the government in two ways: (1) by selling products made in countries that were not "designated" under the Trade Agreements Act; and (2) by making sales to the government on less favorable

terms than those that Océ offered to private customers.  On December 21, 2006, Relators filed an Amended Complaint.

The False Claims Act requires relators to provide the Government with both the Complaint and a "written disclosure of substantially all material evidence," so that the Government can decide whether to intervene in the case. 31 U.S.C. § 3730(b)(2) (2008). In preparing their 3730(b)(2) written disclosure (hereinafter "disclosure statement" or "relators' statement") in this case, Relators and their attorneys not only summarized the general factual allegations set forth in their Complaint against Océ, but also provided a thorough analysis of Océ's legal obligations under the terms of its government contracts, and the mechanisms by which it had violated those terms.  For example, Relator Stephanie Schweizer culled and analyzed the data at her disposal to create a spreadsheet demonstrating Océ's history of violation. This spreadsheet was referenced verbally throughout the disclosure statement, and was attached as an exhibit thereto.

In addition to serving the Government with the disclosure statement, Relators also filed it with the Court. After some consideration, on March 3, 2008, the United States Government indicated that it would continue to investigate the case, but would not immediately intervene. Subsequently, on June 2, 2008, this Court ordered that the Complaint be unsealed.  In so doing, the Court specifically required that "all other contents of this Court's file remain under seal and not be made public or served upon the defendant, except for this Order and the Notice of the United States That It Is Not Intervening at this Time." See Order, Civil Action No. 06-648, Hon. Judge Royce C. Lamberth, June 2, 2008, ¶ 2.   Thus, by the plain language of the Court's order, the disclosure statement was to remain under seal.

Due to an apparent clerical error on the part of the Clerk of Court, however, Relators' disclosure statement was unsealed and made public on the Court's electronic PACER system, and Defendants apparently obtained a copy of it, along with the Complaint, from PACER. On June 20, 2008, after Relators became aware of this error, the United States Department of Justice contacted the Clerk of Court on Relators' behalf, notified the Court of the clerical error, and requested in writing that the documents be resealed. See Letter from Jeffrey A. Taylor to Nancy Mayer-Whittington (attached to this Memorandum as Exhibit A). The Clerk acknowledged the error and complied with the Justice Department's request.

On July 10, 2008, Defendants indicated that they planned to file a motion to unseal the disclosure statement and its accompanying exhibits. Relators responded that they planned to contest this motion, on the basis that the disclosure statement and exhibits are privileged. Furthermore, in light of the unusual situation that led to the statement's initial unsealing, Relators requested that Defendants treat the document as privileged, inadvertently released information, and that they sequester or destroy all copies in their possession, in accordance with Fed. R. Civ. Proc. 26(b)(5)(B). Defendants have honored this request for the time being. However, on July 16, 2008, Defendants filed their Motion to unseal all the documents on file, including the disclosure statement and exhibits.

As Relators will demonstrate herein, the disclosure statement is categorically privileged and it is not discoverable by Defendants. The exhibits are also privileged, both as graphic versions of the disclosure statement and as opinion work product. Therefore, Defendants' motion must be denied, as to both the disclosure statement and its accompanying exhibits.

## II.    ARGUMENT

### A.    Qui Tam Disclosure Statements Are Categorically Privileged, According to the Clear Precedent of This and Other Courts.

A growing body of case law, in this and other courts, demonstrates that disclosure statements are categorically excluded from discovery, although these cases have differed on whether this exclusion originates in the attorney-client privilege or the work product doctrine. E.g., Miller v. Holzmann, 240 F.R.D. 20, 23 (D.D.C. 2007) (finding that "attorney-client privilege . . . shields [relator's statement] from discovery"); U.S. ex rel. Hunt v. Merck-Medco Managed Care, 2004 WL 868271, at *2 (E.D. Pa. 2004) (holding that "[b]ecause the Disclosure Statements were prepared in anticipation of litigation, they fall within the general protection of the Work Product Doctrine"); U.S. ex rel. Bagley v. TRW, Inc., 212 F.R.D. 554, 558 (C.D. Cal. 2003) (holding that "the statutory purpose of the disclosure requirement is best promoted by a bright-line rule precluding discovery of all portions of disclosure statements or drafts thereof").

This Court has emphasized the attorney-client privilege as the primary basis for protection of the disclosure statement from discovery, see Miller, 240 F.R.D. at 20, and has consistently rejected the argument that the disclosure statement loses its privileged status upon being shared with the government, id. Indeed, this Court has found that the common interest between the government and the relator in False Claims Act litigation extends the attorney-client privilege to relator-government communications, under the "common interest" or "joint-prosecutorial" privilege. See id. at 23; U.S. ex rel. Purcell v. MWI Corp., 238 F.R.D. 321, 326 (D.D.C. 2006) (noting in *qui tam* case that "defendants failed to support their contention that the voluntary disclosure of the [disclosure

4

statement] constitutes a complete waiver of the work-product privilege or the joint-prosecutorial privilege"); U.S. ex rel. Pogue v. Diabetes Treatment Centers, 2004 WL 2009413 (D.D.C. 2004) ("[d]espite the information-sharing that occurred between Relator . . . and the United States, the [attorney-client and work product] privileges are not waived because their communications were conducted in furtherance of joint prosecution and on the basis of common interests"). Thus, because Relators and the government share a common interest in the instant litigation, the disclosure statement – which the Relators prepared solely for the government's review – remains privileged even after being released to the government.

Courts addressing this issue have also emphasized that that the disclosure statement constitutes attorney work product prepared "in anticipation of litigation," Hunt, 2004 WL 868271, at *2 (quoting Fed. R. Civ. Proc. 26(b)(3)(A)). Specifically, the disclosure statement falls within the indefeasibly protected category of opinion work product, Bagley, 212 F.R.D. at 556, and is therefore non-discoverable. The court in Bagley noted that "the Disclosure Statement distills often complex facts and law into a narrative statement intended to inform the government of the nature of the claims the relator asserts on its behalf." Id. Accordingly, the statement contains "mental impressions, conclusions, opinions, or legal theories," Fed. R. Civ. 26(b)(3)(B), and is unconditionally protected from discovery under that Rule. Bagley, 212 F.R.D. at 556.

Tellingly, Defendants' Memorandum fails to address the disclosure statement's privileged status, and instead relies on a "general presumption in favor of public and transparent court proceedings." Defendants' Memorandum, p. 3. Although such a presumption may exist in some circumstances, it is not applicable in a False Claims Act

5

case because the case law specifically establishes that the disclosure statement is privileged. Indeed, Defendants' sole support for their discoverability argument is <u>United States ex rel. Burns v. A.D. Roe Co.</u>, a case whose holding has been overwhelmingly rejected by this and many other courts, and which was never binding on this Court in any case. <u>United States ex rel. Burns v. A.D. Roe Co.</u>, 904 F. Supp. 592, 594 (W.D. Ky. 1995).

Defendants' reliance on <u>In re Sealed Case</u> is similarly unpersuasive, as that case did not address the specific issue of the FCA disclosure statement, and stands only for the generic proposition that a court may not seal large records of unidentified documents without explanation. No. 97-5001, 1997 U.S. App. LEXIS 28546 (D.C. Cir., Oct. 8, 1997), at *2-3. However, this Court's June 2, 2008 decision to keep the disclosure statement under seal has ample explanation, given that the 3730(b)(2) disclosure statement has been consistently and categorically found to be privileged. Accordingly, <u>In re Sealed Case</u> has no bearing on the current situation. Defendants' reliance on vague generalities to support their motion, together with their failure to address the specific precedent relevant to this issue, highlights the weakness of their position.

    **B. The Principle of Non-Discoverability Applies With Equal Force to the Exhibits.**

In addition to the disclosure statement itself, Defendants also seek discovery of the fifty-four documents attached to the statement as exhibits. As Defendants note in their Memorandum, p. 3, these exhibits include several spreadsheets that Relators have prepared in order to graphically present their theory of the case. These charts were intended to complement the verbal disclosure statement, and to facilitate the government's decision-making regarding whether to intervene. Thus, given that the

disclosure statement is protected by privilege, see, e.g., Miller, 240 F.R.D. at 23, it would be anomalous to hold that the Relators forfeited that privilege simply by putting their analysis in graphic form.

Furthermore, even laying aside these exhibits' relationship to the disclosure statement, it is clear that they – like the statement itself -- are privileged opinion work products in their own right. Fed. R. Civ. Proc. 26(b)(3) announces that "the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative a party concerning the litigation." Fed. R. Civ. Proc. 26(b)(3); see also Hickman v. Taylor, 329 U.S. 495 (1947); Director, Office of Thrift Supervision v. Vinson Elkins, 124 F.3d 1304, 1309 (D.C. Cir. 1997)). Defendants effectively concede that the spreadsheets set forth in Exhibits 1-3 are opinion work product when they argue that "[w]ithout access to these compilations, the Defendants cannot determine . . . whether, as Defendants suspect is the case, the alleged False Claims Act violations are based on a misunderstanding of what the price reductions clause requires of government contractors." Defendants' Memorandum, p. 4. In other words, Defendants seek the disclosure statement in order to assess Relators' legal theories – a strategic benefit to which they are not entitled, and which would violate the well-settled work product doctrine.

Defendants also note that the set of exhibits attached to the disclosure statement includes "publicly-available documents," and that this fact "militates in favor of unsealing the record." Defendants' Memorandum, pp. 7-8. This argument is untenable on two levels. First, Defendants fail to explain how the public availability of a few documents warrants the unsealing of the entire record, including the categorically

7

privileged disclosure statement. Second, and perhaps more importantly, Defendants' position improperly suggests that because some of the documents are individually discoverable (or publicly available), the strategically compiled series of exhibits is necessarily discoverable.

In fact, the culling, compilation, and arrangement that went into the series of exhibits places it squarely within the category of opinion work product. The D.C. Circuit has held that compilations of documents constitute opinion work product, and has recognized that "[a document] index catalogues factual information, but it also arranges that information in a way that could reveal the preparing attorney's opinions about the information indexed and how it relates to the underlying case." Washington Bancorporation v. Said, 145 F.R.D. 274, 276 (D.C. Cir. 1992); see also Sporck v. Peil, 759 F.2d 312, 316 (3d Cir. 1985) (holding that attorney's "selecting and ordering a few documents out of thousands . . . could not help but reveal important aspects of his understanding of the case," and therefore that a document compilation constituted "highly-protected" opinion work product); James Julien, Inc. v. Raytheon Co., 93 F.R.D. 138, 144 (D.Del. 1982) (finding that "the process of selection and distillation is often more critical than pure legal research").[1] Although some documents within the exhibit series may be otherwise attainable by Defendants – either through the traditional channels

---

[1] This Circuit has reached a similar conclusion in the context of the Freedom of Information Act, finding that "[w]hat is not in, and should not be in, the public record is the . . . evaluation and selection of certain facts from the 9200-page public record . . . in some cases selection of facts or summaries may represent a *deliberative process*." Montrose Chemical Corp. v. Train, 491 F.2d 63, 70-71 (D.C. Cir. 1974); see also Mapother v. Department of Justice, 3 F.3d 1553, 1537 (D.C. Cir. 1993) (noting that "the privilege serves to protect the deliberative process itself, not merely documents containing deliberative material"). These decisions underscore the Circuit's recognition that document compilation involves extensive deliberation and analysis, and as such is not discoverable.

of discovery, or through the public domain – Relators' selection and organization of those documents into a single, cohesive set is subject to a claim of privilege under the work product doctrine. Thus, Defendants' motion to unseal the exhibit series must be denied.

### C. Protecting Both the Disclosure Statement and the Exhibits from Discovery Best Effectuates the Legislative Purpose of the False Claims Act.

In finding that the disclosure statement is subject to a claim of privilege, this Court has astutely noted that "the statutory provision [requiring the disclosure statement] advances the congressional desire that the relator apprise the government of all he or she knows . . . [This goal] would be negated if relator's attorney-client privilege were forfeited." Miller v. Holzmann, 240 F.R.D. at 23. The court in Bagley reached a similar conclusion, finding that "[t]he statutory purpose of the disclosure requirement . . . is best served by treating disclosure statements in a manner that encourages the relator and his or her counsel to make them as complete, detailed, and thoughtful as possible," and determining that "leaving open the question whether disclosure statements . . . must be turned over to a *qui tam* defendant will tend to defeat the goals of section 3730(b)(2)." United States ex rel. Bagley v. TWI Corp., 212 F.R.D. 554, 557-58 (C.D. Cal. 2003). These decisions correctly hold that allowing the defendant to review the disclosure statement would have a chilling effect on relators' disclosure statements, and would frustrate the legislative purpose of the False Claims Act.

Defendants' argument that they require the disclosure statement to "fully assess the factual content of the very serious offenses they have been accused of committing," Defendants' Memorandum p. 4, is unavailing. Relators' Complaint has laid out the factual contents of their claims with the particularity required by Fed. R. Civ. Proc. 9(b),

9

and Defendants are now free to pursue traditional channels of discovery in order to mount their defense. By requesting discovery of the disclosure statement, Defendants attempt to exploit the 3730(b)(2) disclosure requirement for their own strategic benefit, a tactic that has been roundly rejected by the courts. See U.S. ex rel. Yannacopoulous v. General Dynamics, 235 F.R.D. 661, 666 (N.D. Ill. 2006) (finding "no suggestion in the legislative history that the [disclosure statement] provision was intended to benefit the defendant in any way"); Bagley, 212 F.R.D. at 558 (finding "no basis for concluding that defendants in *qui tam* actions are entitled, or need, to discover the disclosure statement in order to mount a jurisdictional challenge"). The unique procedural requirements of the False Claims Act do not entitle Defendants to any more relaxed rules of discovery than they would enjoy in any other litigation.

As these decisions have recognized, the purpose of the 3730(b)(2) disclosure requirement is to benefit the government, not the defendant, in assessing the relator's claims. For this reason, the disclosure statement is protected from discovery. The same rationale applies to the relators' compilation of exhibits in this case, since those exhibits were organized and presented to enhance the clarity and utility of the disclosure statement. Just as permitting discovery of the disclosure statement would have a chilling effect on relators' disclosure statements, permitting discovery of the exhibits would discourage relators from presenting informational documents in a useful and meaningful manner. For these compelling reasons of public policy, Defendants' request to unseal both the disclosure statement and its exhibits must be denied.

    **D.**    **Not Only is the Disclosure Statement Categorically Privileged, But Defendants Have Not Even Shown Need for Its Factual Portions.**

As Relators have demonstrated, the disclosure statement and its exhibits

are categorically protected from discovery, and to hold otherwise would break with this Court's clear precedent and undermine legislative purpose. Even if the Court were to depart from this principle, however, Defendants would still only be entitled to those portions of the statement that constitute factual work product, and even then only upon the proper showing of necessity and undue hardship.

It is well settled in this Circuit that "[o]pinion work product . . . is virtually undiscoverable," but that factual work product may be disclosed "upon a showing of need and undue harship in acquiring the information any other way." Pogue, 2004 WL 2009413, at *3 (citing Vinson Elkins, 124 F.3d at 1309); see also Fed. R. Civ. Proc. 26(b)(3) (factual work product may be discoverable if the party seeking discovery can show "substantial need" for the material and "undue hardship" in obtaining the information in another way). In some circumstances, upon stipulation by the parties, courts have permitted discovery of the disclosure statement with all "opinion work product" portions redacted. E.g., U.S. ex rel. Yannacopoulos v. General Dynamics, 231 F.R.D. 378, 387 (N.D. Ill. 2005) (finding *in camera* review necessary to separate fact from opinion in disclosure statement, where parties had stipulated that the factual portions were discoverable by defendant).

Relators in the instant case, unlike those in Yannacopoulos, have not stipulated to the discovery of the disclosure statement's factual portions, nor do they believe that any part of the disclosure statement is discoverable under any circumstances. Relators emphasize, however, that even if the Court were to find the the disclosure statement's factual portions to be theoretically discoverable, Defendants may still not discover these portions until: 1) they have demonstrated the "substantial need" and "undue hardship"

11

required by the Federal Rules of Civil Procedure and this Circuit; and 2) the Court has conducted an *in camera* review to separate factual from opinion work product. The first condition has certainly not been satisfied: Defendants have not conducted any discovery beyond demanding the privileged disclosure statement, and cannot support their contention that the statement is necessary to understand the charges against them. Accordingly, Defendants cannot even claim entitlement to an *in camera* review at this time.

### III. CONCLUSION

This Court has joined many others in holding that the 3730(b)(2) statement is categorically privileged from discovery. This holding rests on a sound analysis of the work product doctrine and attorney-client privilege, as well as the legislative purposes behind the False Claims Act. Its rationale applies not only to the disclosure statement itself, but also to the accompanying exhibits, whose strategic selection and arrangement constitute opinion work product. The Court's June 2, 2008 Order, which determined that the disclosure statement remained under seal, further affirms that the disclosure statement is non-discoverable.

Moreover, even assuming *arguendo* that the disclosure statement's factual portions were theoretically discoverable, Defendants have not shown substantial need for such portions. Indeed, they have not made any effort to show their need for the statement and exhibits, beyond claiming a desire to "fully assess the factual content" of the claims against them. This claim has been consistently rejected as a basis for defendants' seeking discovery of the 3730(b)(2) disclosure statement.

By Moving to Unseal the Docket, Defendants exploit a minor clerical error to gain unwarranted strategic advantage in this litigation. Their Memorandum fails even to address the robust body of case law indicating that the sealed documents are subject to privilege, nor does it acknowledge that their position is contrary to this Court's initial ruling on the matter. In light of the foregoing, this Court must adhere to its original Order finding that only the Complaint should be unsealed, and must deny Defendants' Motion to Unseal the Docket.

Date:   July 29, 2008                        RESPECTFULLY SUBMITTED,

      /s/ H. Vincent McKnight
H. Vincent McKnight, Jr.
D.C. Bar No. 293811
**ASCHRAFT & GEREL, LLP**
2000 L Street, N.W., Suite 400
Washington, D.C. 20036
(202) 783-6400

   /s David Sanford
David Sanford
D.C. Bar No. 457933
**SANFORD WITTELS & HEISLER, LLP**
1666 Connecticut Ave., N.W. Suite 310
Washington, D.C. 20009
(202) 742-7780

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing Opposition to Defendants' Motion to Vacate the Court's Order of June 18, 2008 Granting Plaintiffs' Motion to Extend the Time for Serving Océ , N.V. was served electronically via the Court's CM-ECF system and by first-class U.S. Mail, on July 9, 2008 on the following:

      Laurie Weinstein, Esq.
      United States Attorney
      555 4th Street, N.W.
      Washington, D.C.  20001

      Michael Mukasey, Esq.
      United States Attorney General
      U.S. Department of Justice
      950 Pennsylvania Ave., N.W.
      Washington, D.C.  20530

      Jason Matechak, Esq.
      Kathleen, McGuan, Esq.
      Reed, Smith, LLP
      1301 K Street, N.W.
      Washington, D.C.  20001

                                       ____/s/__Stefanie Roemer
                                        Stefanie Roemer