**Westlaw Delivery Summary Report for CHAHBAZI,MEENOO 6395529**

| | |
|---|---|
| Date/Time of Request: | Tuesday, July 29, 2008 11:47 Central |
| Client Identifier: | OCE |
| Database: | DCT |
| Citation Text: | Not Reported in F.Supp.2d |
| Lines: | 443 |
| Documents: | 1 |
| Images: | 0 |

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson Reuters, West and their affiliates.

Westlaw.

Not Reported in F.Supp.2d                                                                                                       Page 1
Not Reported in F.Supp.2d, 2004 WL 2009413 (D.D.C.)
**2004 WL 2009413 (D.D.C.)**

U.S. ex rel. Pogue v. Diabetes Treatment Centers of America
D.D.C.,2004.
Only the Westlaw citation is currently available.
United States District Court,District of Columbia.
UNITED STATES, ex rel. Scott Pogue Plaintiffs,
v.
DIABETES TREATMENT CENTERS OF AMERICA, et al. Defendants.
No. Civ.99-3298, 01-MS-50(MDL)(RCL).

filed Dec. 13, 1999.
May 17, 2004.
last filing Aug. 12, 2004.

John G. Despriet, Smith, Gambrell & Russell, L.L.P., Promenade II, Atlanta, GA, Lead Attorney, Attorney to be Noticed, for Anthony E. Karpas, (Defendant).
Mark S. Hardiman, Hooper, Lundy & Bookman, Inc., Los Angeles, CA, Attorney to be Noticed, for Diabetes Treatment Centers of America, Inc., (Defendant).
John R. Hellow, Hooper, Lundy & Bookman, Inc., Los Angeles, CA, Attorney to be Noticed, for Diabetes Treatment Centers of America, Inc, (Defendant).
Bryan E. Larson, Base, Berry & Sims, P.L.C., Nashville, TN, Lead Attorney, Attorney to be Noticed, for Diabetes Treatment Centers of America, Inc, (Defendant).
Don P. McKenna, Hare, Wynn, Newell & Newton, Birmingham, AL, Attorney to be Noticed, for A. Scott Pogue, (Plaintiff).

*OPINION AND ORDER*

LAMBERTH, J.
**\*1** Before the Court is the Motion of Defendants Paul C. Davidson, M.D., Bruce W. Bode, M.D., Judson G. Black, M.D., Robert D. Steed, M .D. and Anthony E. Karpas, M.D. ("the Atlanta Physicians") to Compel Production of Documents in Compliance with Subpoenas Duces Tecum [823] and Motion for a Hearing with Notice to All Parties on Proposed Partial Settlement [834]. Specifically, the Atlanta Physicians move the court to order Realtor Pogue to produce documents pertaining to the terms of a proposed settlement agreement between HCA, the parent company of West Paces Medical Center, and the United States, and for a hearing on the issue.

Upon review of the motion papers, the applicable law and the record in this case, the Court will deny the Atlanta Physicians' motions.

*BACKGROUND*

In December 2002, HCA/West Paces offered to settle several of the claims against them for $631 million. Attorneys for the Department of Justice ("DOJ") agreed to recommend that the settlement offer be accepted, and sought approval from other officials at the DOJ. The United States has also intervened in the multi-district litigation action, and government attorneys have spoken with the relators in an effort to obtain their consent to the settlement "as fair, adequate, and reasonable." In February and March 2003, government attorneys and counsel for Relator Pogue had several telephone conversations during which they discussed the proposed settlement. Both the government and Relator Pogue maintain that these phone conversations were conducted pursuant to an explicit "joint-interest privilege agreement." The proposed settlement was announced in the February 2003 status report.

On February 28, 2003, the Atlanta Physicians served a Rule 45 subpoena upon Helmer, Martins & Morgan Co. L.P.A., one of the law firms representing Relator Pogue. The subpoena seeks legal memoranda, correspondence and memoranda of conversations between Relator Pogue's counsel and government attorneys related to the terms of a proposed settlement between HCA/West Paces and the

United States. On March 5, 2003, Relator Pogue's counsel objected pursuant to Fed.R.Civ.P. 45, maintaining that the documents sought were protected by attorney-client, work product, joint prosecution, and common interest privileges. In response, the Atlanta Physicians filed the instant motion to compel.

The Atlanta Physicians maintain that they are entitled to discovery of documents pertaining to the proposed settlement agreement between HCA/West Paces and the United States because they have standing to object to any partial settlement, even one that does not include them, that may prejudice their legal position. The Atlanta Physicians maintain that the only way to determine whether the settlement will prejudice them is to view the documents related to the settlement negotiations. The Atlanta Physicians also maintain that they are entitled to this discovery as a means of gathering information regarding Relator Pogue's theory of damages. The Atlanta Physicians contend that the attorney-client, work product, common interest and joint prosecution privileges asserted by Relator Pogue and the United States do not shield the documents that they are requesting because Relator Pogue and the United States waived any attorney-client and work product privileges that may have applied by sharing and disclosing information with one another. The Atlanta Physicians further argue that the joint prosecution and common interest privileges do not apply because Relator Pogue and the United States' prior common interests in prosecuting the defendants were eviscerated by the proposed settlement, which now pits Relator Pogue and the United States against one another as they each vie for a percentage of the settlement amount.

*2 Relator Pogue maintains that the documents sought, which were prepared by counsel for the purposes of the instant litigation, are protected by attorney-client, work product, joint prosecution, and common interest privileges. Specifically, Relator Pogue maintains that communications between himself and his counsel are shielded from discovery by the attorney-client privilege, and that his counsel's notes, legal memoranda, memorializations of conversations with government counsel, legal research, and correspondence drafted by his counsel are protected by the opinion work product doctrine. Relator Pogue also maintains that none of the privileges have been waived because the documents have not been viewed by anyone other than him and his counsel. Relator Pogue further maintains that his counsel's conversations with government attorneys are also protected by the joint prosecution and common interest privilege. Relator Pogue alternatively argues that even if the privileges did not apply, the Atlanta Physicians, as non-settling defendants in a False Claims Act ("FCA") case, do not have standing to object to a proposed settlement with another defendant and have not otherwise demonstrated need for the documents as required by Fed.R.Civ.P. 26(b)(3). Lastly, Relator Pogue maintains that the instant motion to compel was filed in violation of Rules 1 and 45 of the Federal Rules of Civil Procedure, for failure to exhaust extrajudicial means pursuant to Southern District of Ohio Local Rules 37.1, before filing the instant motion. As such, Relator Pogue also requests the award of expenses for the cost of litigating the instant motion.

The United States maintains that, as a real party in interest, it has standing to oppose the instant motion. In doing so, the United States contends that the motion should be denied because the Atlanta Physicians lack standing to oppose the proposed settlement. In the alternative, the United States argues that even if the Atlanta Physicians had standing, it would only apply to a final settlement agreement and not the instant proposal. The United States also maintains that the subpoena is being used as a tool of harassment, is not reasonably calculated to lead to the discovery of admissible evidence, and that the proper manner for gathering information to assess Relator Pogue's damages theory is to serve an interrogatory upon Relator Pogue, not to complain about Relator Pogue's answer to another party's interrogatory. Moreover, the United

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

States maintains that the comminications sought are protected by the attorney-client, opinion work product, joint prosecution, and common interest privileges.

*APPLICABLE LAW*

I. *Local Rules*

This Court has previously stated that "if a court is sitting as a court of another district, and the purpose of doing so is to preserve uniformity within that district and circuit, a court acting under § 1407 is bound by the rules and law of the district in which he is sitting as a judge, and the parties are likewise bound."*United States ex rel. Pogue v. Diabetes Treatment Centers of America, Inc.,* 238 F.Supp.2d 270, 276 (D.D.C.2002) (citing *Corrugated Container DC,* 662 F.2d 875, 881 n. 11 (D.C.Cir.1981)). Furthermore, the Court specifically instructed that "Relator is advised that if he asks this Court to exercise its § 1407 powers in connection with other matters in this litigation he must comply with the local rules of the district from which the subpoena issued."*SeePogue,* 238 F.Supp.2d at 275 n. 5. The footnoted admonishment was relator-specific because of the nature of the issue before the court. But, this footnote in conjunction with the textual instruction that the parties comply with the local rules of the Southern District of Ohio more than sufficiently notifies all parties that this Court expects that they do so. Being that the subpoena at issue was issued by the United States District Court for the Southern District of Ohio, the appropriate local rules of that court should be applied.

IV. *Privileges*

A. *Attorney-Client and Work Product Privileges*

**\*3** Parties may not obtain discovery of privileged information unless the privilege has been waived. *See*Fed.R.Civ.P. 26(b).*Seealso*United States ex rel. Purcell v. MWI Corp. et al., 209 F.R.D. 21, 24 (D.D.C.2002). Attorney-client and work product are two such privileges. *See*In re Sealed Case, 676 F.2d 793, 808 (D.C.Cir.1982).

Pursuant to Fed.R.Civ.P. 26(b)(1), the attorney-client privilege protects all confidential communications between a client and the client's attorney that occur in connection with legal representation or in the process of obtaining legal representation. *See*In re Bruce Lindsey, 158 F.3d 1263, 1268 (D.C.Cir.1998). The party who asserts the privilege bears the burden of establishing that it exists. *See*MWI Corp., 209 F.R.D. at 24. The attorney-client privilege may be waived by disclosing privileged material to another person.

Pursuant to Fed. R. Civ. Pro. 26(b)(3), the work-product privilege protects not only communications but also materials obtained or prepared by counsel. *See In re Sealed Case,* 676 F.3d at 808-09;*Hickman v. Taylor,* 329 U.S. 495, 511, 67 S.Ct. 385, 91 L.Ed. 451 (1947). The work product doctrine extends the privilege to both "fact" and "opinion" work product. *SeeDirector, Office of Thrift Supervision v. Vinson Elkins LLP, et al.,* 124 F.3d 1304, 1308 (D.C.Cir.1997). Opinion work product, information revealing the mental impressions and legal evaluations of counsel, is virtually undiscoverable. *SeeDirector, Office of Thrift Supervision,* 124 F.3d at 1308. However, a party may discover factual work product upon a showing of need and an undue hardship in acquiring the information any other way. *See*Fed.R.Civ.P. 26(b)(3); *Director, Office of Thrift Supervision,* 124 F.3d at 1308. While the party who asserts the work product privilege has the burden of proof of demonstrating its applicability, the party who seeks the work product has the burden of showing necessity for the requested documents. Normally, the work product privileged is waived by disclosing the privileged information to another party. *SeeIn re Sealed Case,* 29 F.3d 715, 719 (D.C.Cir.1994).

B. *Joint Prosecution and Common Interest Privileges*

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

In complex litigation situations, such as those presented by multi-district litigation, courts recognize and apply the joint prosecution [FN1] and common interest privileges, which broaden the attorney client and work product privileges so as to protect communications made to third parties under certain circumstances. See *In re Lindsey,* 158 F.3d at 1282 (stating that "when a third party is a lawyer whose client shares an overlapping common interest with the primary client, the privileges may remain in tact.").

> FN1. Several courts have applied the rules governing the joint defense privilege to joint prosecution agreements so as to create a joint-prosecution privilege under the same grants and strictures. See *Purcell,* 209 F.R.D. at 25. (stating that "[e]xtending the principle underpinning the joint-defense privilege, several courts have recognized the joint-prosecutorial privilege as a parallel privilege." and citing In re Grand Jury Subpoenas, 902 F.2d at 249; *United States ex rel. Burroughs v. DeNardi Corp.,* 167 F.R.D. 680, 685-86 (S.D.Cal.1996) (citing *In re Grand Jury Subpoenas,* 902 F.2d at 249); *Loustalet v. Refco Inc.,* 154 F.R.D. 243, 247 (C.D.Cal.1993); *Sedlacek v. Morgan Whitney Trading Group,* 795 F.Supp. 329, 331 (C.D.Cal.1992).

The joint prosecution privilege protects disclosures between two or more parties and their respective counsel if their communications are conducted under a joint prosecution agreement. See *In re sealed Case,* 29 F.3d at 719 n. 5; *Purcell,* 209 F.R.D. at 25; *In re Grand Jury Subpoenas,* 902 F.2d 244, 249 (4th Cir.1990). Application of the joint prosecution privilege depends on a successful showing that: 1) the communications occurred in the course of a joint prosecution effort; 2) that communications were designed to further the effort; and 3) the privilege has not been waived. See *In re Sealed Case,* 29 F.3d at 719.

**\*4** The common interest privilege protects disclosures between a lawyer and two or more clients regarding a matter of common interest or common interests. See *In re sealed Case,* 29 F.3d at 719; *United States v. AT & T Co.,* 642 F.2d 1285, 1300 (D.C.Cir.1980); *United States v. McPartlin,* 595 F.2d 1321, 1336 (7th Cir.1979) (holding that parties need only have *a* common interest, not complete commonality of interests); *Griffith v. Davis,* 161 F.R.D. 687, 692 n. 6 (C.D.Cal.1995) (same); *Eisenberg v. Gagnon,* 766 F.2d 770, 787-88 (3rd Cir.1985) (same); *In re Grand Jury Subpoenas,* 902 F.2d at 249. Parties may successfully operate under the common interest privilege if the communication: 1) is prompted by actual or anticipated litigation; 2) for the purpose of furthering a common interest; and 3) in a manner that is consistent with maintaining confidentiality against adverse parties. The existence of a common interest is determined at the time that the confidential information is disclosed. See *In re UMWA Employee Benefits Plan Litigation,* 159 F.R.D. 307, 314 (D.D.C.1994). The purpose of the joint prosecution and common interest privileges is to ensure that attorneys feel free to fully and completely prepare for trial by assuring that their legal preparations will not be accessible to an adversary. See *AT & T Co.,* 642 F.2d at 1300.

*ANALYSIS*

I. *Applicability of Local Rules*

The Court will not deny the instant motion for failure to comply with Southern District of Ohio Local Rule 37.1 for the following reasons.

Whether Southern District of Ohio Local Rule 37.1 applies to motions to compel ostensibly filed under Fed.R.Civ.P. 45 is an unsettled question in Ohio courts, including the Southern District of Ohio. See *Meridian Diagnostics, Inc. v. Yi,* 2001 WL 1842463, \*2 (S.D. Ohio Mar 9, 2001). Southern District of Ohio Local Rule 37.1 instructs that before a motion to compel can be filed under Fed.R.Civ.P. 37, the parties must exhaust all ex-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

trajudicial means for resolving the dispute. *See*S.D. Ohio Local Rule 37. Failure to do so results in denial of the motion on this ground alone. However, courts of the Southern District of Ohio acknowledge that "[r]ule 37 of the Federal Rules of Civil Procedure does not provide for an award of sanctions for a violation of [Federal] Rule 45(b)(1), [and] Rule 45 is silent with regard to the enforcement of that provision."*SeeMeridian,*2001 WL at *2. Nevertheless, the Southern District of Ohio court in *Meridian* concluded that the defendants violated Southern District of Ohio Local Rule 37.1 by filing their motion before exhausting extrajudicial means for resolving their dispute, and denied the motion to compel on that basis. *Seeid.*

This Court does not feel compelled to act in accord with the *Meridian* court for the following reason. Discovery disputes that arise in an MDL action are appealed to the circuit in which the action originated. In this case, discovery disputes would be appealed to the Sixth Circuit. For the sake of uniformity and intra-circuit consistency, this Court would normally be bound to follow the local rules of the Southern District of Ohio. However, it stands to reason that an MDL judge is not bound under this rationale in cases where the law on the issue is not settled or not developed, for an MDL judge cannot disrupt the consistency of law that does not yet exist in any useful form. Such is the case here, where, even after noting that the question is unsettled in its district and reprimanding counsel for citing to another case that seems to act without authority, the *Meridian* court merely notes the lack of law on the issue before going on to deny the motion without citing any authority itself or conducting any useful analysis. Under these conditions, this Court finds that is unfair to deny the Atlanta Physicians' motion for failure to comply with discordant law. Moreover, it seems to the Court, upon consideration of the representations made in all of the motion papers, that Relator Pogue and the United States were not prejudiced by the instant motion because the dispute is such that resolution would require the Court's intervention in any event, thereby substantially justifying litigation of the instant issue. Therefore, the Court will not deny the Atlanta Physicians' motion on the grounds that it failed to comply with Southern District of Ohio Local Rule 37.1.

II. *Applicability of Privileges*

**\*5** The Atlanta Physicians may not discover the information sought by the subpoena. The information sought by the instant subpoena is privileged under the attorney-client, work product, joint prosecution, and common interest privileges, and these privileges have not been waived by the actions of Relator Pogue and the United States. Moreover, even if the documents sought were not protected under these privileges, the Atlanta Physicians have not established need as required by Rule 26(b)(3). Therefore, the Atlanta Physicians motion to compel will be denied.

The documents requested by the subpoena are shielded by the attorney client and work product privileges. The communications that occurred between Relator Pogue and his counsel were in furtherance of Relator Pogue's legal representation and for the purpose of obtaining legal advice regarding the settlement proposed by HCA/West Paces. As such, those communications are protected by the attorney-client privilege. The notes, legal memoranda, legal research, and correspondence prepared or obtained by Relator Pogue's counsel related to the proposed settlement were generated in connection with Relator Pogue's legal representation and procurement of legal advice from his counsel, and are, as such, protected by the work product privilege, specifically, the opinion work product privilege as these documents reflect the mental impressions and legal evaluations of counsel.

Neither privilege has been waived. Although it is generally the case that a client/counsel sharing privileged information with a third person or party waives the attorney-client and work product privileges, the instant documents remain undiscover-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

able by application of the joint prosecution and common interest privileges. Despite the information-sharing that occurred between Relator Pogue and the United States, the privileges are not waived because their communications were conducted in furtherance of joint prosecution and on the basis of common interests.

The joint prosecution privilege, which protects disclosures between two or more parties and their respective counsel when the communications are conducted under a joint prosecution agreement, applies to the instant case. Here, the communications occurred in the course of Relator Pogue's and the United States' attempt to prosecute the defendants for violations of the FCA. In the course of that prosecution, HCA/West Paces offered Relator Pogue and the United States a settlement of $631 million. The purpose of the communications between Relator Pogue and the United States, through their respective counsel, was to determine whether the settlement agreement was "fair, adequate and reasonable," in furtherance of the effort to hold the defendants sufficiently accountable for violations of the FCA. Moreover, Relator Pogue and the United States have done nothing to otherwise waive the privilege. As such, Relator Pogue's third party communications with the United States do not destroy the attorney-client or work product privileges.

**\*6** The communications between Relator Pogue and the United States, through their respective counsel, are further protected by the common interest privilege. Consistent with successful application of the privilege, the communications between Relator Pogue and the United States were promoted by the settlement offered in the instant litigation, for the purpose of furthering their common interest in holding the defendants legally responsible for violating the FCA, and involved a very closed universe of participants pursuant to an explicit joint prosecution agreement. This is entirely consistent with maintaining the confidentiality of the information. As such, the common interest privilege is also applicable to this case, and Relator Pogue's third party communication does not destroy the attorney-client or work product privilege.

Contrary to the Atlanta Physicians' contention, Relator Pogue and the United States do not lack a common interest because of the eventual settlement distribution. Rather, Relator Pogue's and the United States' common interest in the prosecution of the defendants and settlement negotiations that vindicate the interests of both Relator Pogue and the United States remain at this stage. The point at which the Atlanta Physicians' contention might even be viable would be after the settlement agreement was finalized, at which point it would be a matter of public record, and a motion would be unnecessary in any event.

Even if the documents requested by the subpoena are not protected by these various privileges, the material is still not discoverable because the Atlanta Physicians' have failed to show "need" pursuant to Rule 26(b)(3). The only information that the Atlanta Physicians might conceivably have proper access to is "factual" work product, which includes facts known or gathered by counsel in the course of legal representation. However, factual work product is only discoverable upon a sufficient showing of need, which requires a showing that there is no reasonable alternative source for the same or substantially equivalent information, and that the party has a substantial need for the information. However, under the reasons proffered by the Atlanta Physicians, they have shown neither a lack of alternative resources nor substantial need.

First, the Atlanta Physicians have failed to show that there are no alternative sources for the information that is seeks. The United States is correct in noting that if what the Atlanta Physicians seek is information about Relator Pogue's damages theory, then they should proceed with serving a proper interrogatory and any necessary follow-up upon Relator Pogue to obtain that information. The parties currently dispute whether the Atlanta Physicians have supplied Relator Pogue with the discovery necessary for Relator Pogue to make a damages calcu-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

lation. The Court advises the parties to iron out this issue before filing motions similar to the instant motion on this point.

**\*7** Second, the Atlanta Physicians have failed to show substantial need for the documents requested by the subpoena. They maintain that they need to review the requested documents so that they can determine whether they have grounds for objecting to the proposed settlement. But, this argument does not demonstrate a legally cognizable substantial need because, as non-settling defendants in an FCA case, the Atlanta Physicians do not have standing to oppose a settlement agreement.

In this jurisdiction, a non-settling defendant may oppose a settlement to which he is not a party if the settlement will cause him "plain legal prejudice," prejudice that may occur if the settlement strips the party of a legal claim or cause of action. *See Mayfield v. Barr,* 985 F.2d 1090, 1093 (D.C.Cir.1993). However, a non-settling party does not have standing to oppose a settlement when the settlement does not affect the non-settling party's "right to litigate [its] claims independently." *See Mayfield,* 985 F.2d at 1093. No such legal prejudice results against a defendant in a multi-defendant FCA case where the Government and a Relator settle with one of the independently sued defendants. In an FCA case, a non-settling defendant does not have a right to challenge a proposed settlement because a settlement between one of the defendants and a Relator and the United States does not affect the ability of other defendants to litigate their claims independently. On the defendants' own authority, they would not be bound by a settlement agreement entered into by the United States, Relator Pogue and HCA/West Paces. *See New Mexico v. U.S. Dep't of Interior,* 820 F.2d 441, 445 (D.C.Cir.1987). Moreover and contrary to the Atlanta Physicians' arguments, they do not have any rights to indemnity or contribution under the FCA, and, the proposed settlement agreement, obviously, cannot adversely affect rights that the defendants do not have under the Act. *See United States v. Nardone,* 782 F.Supp. 996, 999 (M.D.Pa.1990); *United States v. Kennedy,* 431 F.Supp. 877, 878 (C.D.Cal.1977). The text FCA seems to implicitly recognize this reality for while it expressly and exclusively grants a relator the right to object to a proposed settlement between the government and a defendant, it does not afford this same right to a non-settling defendant. *See* 31 U.S.C. 3730(c)(2)(b). Moreover, this court is not aware of any court that has recognized the right of a non-settling defendant to oppose settlement in an FCA case. Not having a legally assertable right to challenge the proposed settlement, the Atlanta Physician's obviously have no proper need, and definitely not a substantial one, to review the requested documents.

Having found that the Atlanta Physicians, as non-settling defendants, do not have standing under the FCA to object to the proposed settlement between Relator Pogue and the United States, the Court will also deny The Atlanta Physicians' motion for a hearing.

*CONCLUSION*

**\*8** For the aforementioned reasons, the Court DENIES the Atlanta Physicians' motions.

SO ORDERED.

D.D.C.,2004.
U.S. ex rel. Pogue v. Diabetes Treatment Centers of America
Not Reported in F.Supp.2d, 2004 WL 2009413 (D.D.C.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.